IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HIRA EDUCATIONAL SERVICES OF NORTH AMERICA, | 2:18-CV-00486 |
| Plaintiff, | |
| v. | Judge Marilyn J. Horan |
| FRANK AUGUSTINE, *in his official capacity as Chairman of the Board of Supervisors of the Twp of Shenango, Lawrence County, Pennsylvania*; ALBERT BURICK III, *in his official capacity as Supervisor and Secretary-Treasurer of the Board of Supervisors of the Twp of Shenango, Lawrence County, Pennsylvania*; RUSSELL RILEY, *in his official capacity as Vice-Chairman of the Board of Supervisors of the Twp of Shenango, Lawrence County, Pennsylvania*; BRUCE LEONATTI, *in his official capacity as President of the Pittsburgh Chapter of Act For America*; AARON BERNSTINE, *in his individual capacity as State Representative of the Pennsylvania State House of Representatives*; CHRISTOPHER SAINATO, *in his individual capacity as State Representative of the Pennsylvania State House of Representatives*; and ELDER VOGEL JR., *in his individual capacity as Senator at the Pennsylvania State Senate*; | |
| Defendants. | |

## OPINION AND ORDER

On April 13, 2018, Plaintiff HIRA Education Services of North America filed a Complaint alleging that Defendants' conduct caused Plaintiff's contract for the purchase of real property to fail, thereby "depriv[ing] Plaintiff of its right to religious freedom," in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA, 42 U.S.C. § 2000cc et seq.), Pennsylvania's

1

Religious Freedom Protection Act (RFPA, 71 P.S. § 2401 et seq.), 42 U.S.C. § 1981, and 42 U.S.C. § 1983. (Compl. ¶ 150, ECF No. 1). On May 2, 2018, Plaintiff sought a preliminary injunction "regarding the intended unequal use" of the property. (ECF No. 20). Following Plaintiff's Motion for Preliminary Injunction, Defendants filed Motions to Dismiss, (ECF Nos. 64, 68, 74, 78, 106), which were first deferred, (ECF No. 88), and then dismissed as premature in June 2018. (ECF Nos. 104, 114). Defendants Sainato, Vogel, and Bernstine appealed the dismissals, as their Motions were based on claims of various immunities. (ECF Nos. 98, 99, 105). Defendant Leonatti also appealed the dismissal of his Motion. (ECF No. 115). The appeals are still pending before the Third Circuit.

On October 2, 2018, the Court denied Plaintiff's Motion for Preliminary Injunction "without prejudice, in light of the passage of time and need to complete the pleading cycle." (ECF No. 132). Plaintiff filed a Renewed Motion for Preliminary Injunction on November 5, 2018. (ECF No. 134). Defendant Sainato then filed a Motion to Confirm this Court's Lack of Jurisdiction or, in the Alternative, to Hold this Case in Abeyance During the Pendency of the Appeals to the Third Circuit. (ECF No. 140). Defendants Vogel and Bernstine joined in that Motion. (ECF Nos. 149, 151). Following briefing by the parties, oral argument was heard on December 20, 2018. At oral argument, the Court entered an order stating that it would take no further action regarding Defendants Sainato, Vogel, and Bernstine until the Third Circuit rules on their appeals. (ECF No. 155). Plaintiff's Renewed Motioned for Preliminary Injunction, as it pertains to the remaining Defendants, Augustine, Burick, Riley, and Leonatti, is now before the Court.

Based on the following reasons, Plaintiff's Renewed Motion for Preliminary Injunction will be denied.

I. Background

From 1969 until February 2013, the Commonwealth of Pennsylvania owned and operated a Youth Development Center (YDC), providing housing, educational, and rehabilitative services for juvenile offenders, on approximately 150 acres in Shenango Township, Lawrence County. (Compl. ¶¶ 15–17, ECF No. 1). After the YDC facility closed, Pennsylvania's Department of General Services (DGS) made several unsuccessful attempts to sell the property. *Id.* at ¶ 21. In March 2017, DGS issued another invitation to bid on the YDC property. *Id.* at ¶ 20. Plaintiff HIRA Educational Services of America, an Islamic consulting firm that caters to Islamic schools and organizations, submitted the winning bid. *Id.* at ¶¶ 4, 24. Plaintiff's plans for the property included a juvenile facility that would focus on youth intervention, as well as potential plans for an Islamic boarding school. *Id.* at ¶ 25.

Plaintiff received an agreement of sale in May 2017. *Id.* at ¶ 24. Over the following months, Plaintiff timely signed and returned the agreement by June 15, 2017, and paid the deposit on July 13, 2017. *Id.* at ¶¶ 48, 50, 81. The sales agreement then went through the Commonwealth signature process, including signatures from state officials. *Id.* at ¶ 49. Plaintiff anticipated that the sale process would be complete by October 2017, as the remainder of the sale price was due by September 11, 2017. *Id.* at ¶¶ 28, 50. However, during the intervening time, several events took place that ultimately gave rise to Plaintiff filing its Complaint.

On June 6, 2017, Defendants Augustine, Burick, and Riley, sued in their official capacities as members of the Board of Supervisors for Shenango Township, wrote to DGS, requesting information about Plaintiff's plans and stating their concerns. *Id.* at ¶ 30. Their concerns included impact on local tax revenues, conformance with the Township's zoning ordinances, and potential collusion among the bidders. *Id.* at ¶¶ 31–33. The next day, Defendants Vogel, Sainato, and

Bernstine, state legislators, wrote to the Governor of Pennsylvania, expressing concerns about DGS's acceptance of Plaintiff's bid. *Id.* at ¶ 34.

On June 8, 2017, at the Township's Board of Supervisors' monthly meeting, a large crowd gathered to discuss the sale of the YDC property to Plaintiff, even though the Township had no part in the sale. *Id.* at ¶¶ 41–44. Several individuals expressed concerns about a Muslim entity moving onto the property. *Id.* at ¶ 47. Township residents also organized a community meeting, which also drew a large crowd, and Defendants Augustine, Burick, Riley, Bernstine, Sainato, and a representative from Defendant Vogel's office attended. *Id.* at ¶ 51. At the meeting, Defendant Bernstine said, "any national security-type information we have received has been sent to Rep. Kelly's office," which Plaintiff alleges "clearly target[s] Plaintiff's religious beliefs and Defendants' discriminatory assumptions about those beliefs." *Id.* at ¶ 52. Also in attendance at the community meeting was Defendant Leonatti, representing Act for America, a group "committed to recruiting, training, and mobilizing citizens community by community to help protect and preserve American culture and to keep this nation safe." *Id.* at ¶ 53 and n. 3. Defendant Leonatti made "unfounded and inaccurate" statements at the meeting and to news outlets about Plaintiff's plans for the YDC property. *Id.* at ¶¶ 53–54.

Additionally, on June 26, 2017, Defendant Vogel introduced a resolution in the Pennsylvania Senate that would have the effect of stopping the sale if adopted. *Id.* at ¶¶ 57–58. However, before the resolution was adopted by both the Senate and the House, the Attorney General approved the sale of the YDC property to Plaintiff and the sale agreement was executed on June 29, 2017. *Id.* at ¶¶ 59–60.

In July 2017, the Township filed a Statement of Claim against DGS in the Commonwealth of Pennsylvania's Board of Claims, which the Board of Claims ultimately dismissed with

4

prejudice because of a lack of jurisdiction. *Id.* at ¶¶ 73, 83. The Township also filed a Petition for Review in the Commonwealth Court of Pennsylvania in an attempt to halt the sale of the YDC property to Plaintiff. *Id.* at ¶ 77. The Township's Board of Supervisors then proposed zoning changes that would prohibit any type of school from operating on the YDC property. *Id.* at ¶ 74. The Board adopted the proposed zoning ordinance on August 10, 2017. *Id.* at ¶ 84.

On August 30, 2017, the sales agreement between DGS and Plaintiff was nullified because neither party could meet the requirements of the sale agreement. *Id.* at ¶ 89. Plaintiff alleges that it was unable to obtain the required financing by the deadline in the agreement because no institution would provide a loan while litigation regarding the property was pending. *Id.* at ¶ 90. Additionally, DGS could not deliver the property free of lawsuits, so it was unable to perform its side of the contract. *Id.* at ¶ 91. As a result of the sales agreement's nullification, the Petition of Review, pending before the Commonwealth Court, was dismissed as moot. *Id.* at ¶ 94.

In October 2017, DGS reopened bidding on the YDC property. *Id.* at ¶ 96. Allied Coordinated Transportation Services (Allied), on behalf of its parent agency, Lawrence County Community Action Partnership (LCCAP), submitted the winning bid. *Id.* at ¶ 103. In December 2017, after Allied's bid was accepted, LCCAP's CEO announced that LCCAP, in Plaintiff's words, "will likely reach out to the other bidders." *Id.* at ¶ 105. The sales agreement between DGS and Allied was finalized in February 2018, and the deed to the YDC property was recorded in early April 2018. (Joint Stipulation ¶ 3, ECF No. 46). On April 4, 2018, LCCAP's CEO announced that LCCAP "is partnering with others who bid on the property last year." (Compl. ¶ 112, ECF No. 1). However, LCCAP has not yet contacted Plaintiff. *Id.* at ¶¶ 106, 113.

Plaintiff filed the present suit on April 13, 2018, claiming Defendants Augustine, Burick, Riley, Bernstine, Sainato, and Vogel violated RLUIPA, which prohibits a government from

5

"impos[ing] or implement[ing] a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person" or "that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(a)–(b); Compl. ¶¶ 115–28, ECF No. 1. Similarly, Plaintiff also claims that Defendants Augustine, Burick, Riley, Bernstine, Sainato, and Vogel violated RFPA, a Pennsylvania law prohibiting government agencies from "substantially burden[ing] a person's free exercise of religion." 71 P.S. § 2404; Compl. ¶¶ 129–36, ECF No. 1. Plaintiff further alleges that Defendants Augustine, Burick, Riley, Bernstine, Sainato, and Vogel "deprived Plaintiff of its religious freedom under the First Amendment" in violation of 42 U.S.C. § 1983. (Compl. ¶¶ 142–47, ECF No. 1). Lastly, Plaintiff alleges that Defendant Leonatti "unlawfully interfered with and violated Plaintiff's contractual rights, in violation of 42 U.S.C. § 1981." *Id.* at ¶¶ 137–41. In the Complaint, Plaintiff seeks declaratory judgment against all Defendants, an injunction "regarding the intended unequal use of the former YDC property by LCCAP," money damages, and punitive damages. *Id.* at 28.

Defendants Bernstine, Vogel, Augustine, Burick, and Riley filed Motions to Dismiss based in part on Fed. R. Civ. P. 12(b)(7) for failure to join LCCAP as an indispensable party. (ECF Nos. 64, 68, 74). Defendants Bernstine and Vogel, however, withdrew their 12(b)(7) objections. (ECF Nos. 91, 95). The Court later dismissed all other pending Motions to Dismiss as premature. (ECF No. 104). At oral argument on December 20, 2017, Plaintiff commented that it did not bring suit against LCCAP, and that LCCAP was not an indispensable party, because LCCAP "did not do anything wrong."

Plaintiff now seeks a preliminary injunction "preventing the identified Defendants from any further discriminatory actions toward Plaintiff with regard to use of the property." (Pl.'s Br. 3, ECF No. 134).

II. Motion for Preliminary Injunction

Courts employ a four-factor balancing test to determine whether a party is entitled to a preliminary injunction. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). First, the moving party must show that he has "a likelihood of success on the merits" and that he "will suffer irreparable harm if the injunction is denied." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018) (internal quotations omitted). If the moving party establishes both, the court balances those two factors against whether there will be irreparable injury to opposing party if the injunction is granted and whether public interest favors an injunction. *Osorio-Martinez v. AG United States*, 893 F.3d 153, 178 (3d Cir. 2018); *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018).

In establishing a likelihood of success on the merits, the moving party must make "a showing significantly better than negligible but not necessarily more likely than not." *Reilly*, 858 F.3d at 179. "'How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief.'" *Id.* (quoting *Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)). However, even if the moving party demonstrates a likelihood of success on the merits, the court will not order injunctive relief that does not fit the injury or that is unrelated to the complaint. *See Salazar v. Buono*, 559 U.S. 700, 718 (2010) ("A court must find prospective relief that fits the remedy to the wrong or injury that has been established."); *Guyton v. Lappin*, 2012 U.S. Dist. LEXIS 19136, at *11 (M.D. Pa. Feb. 15, 2012) (noting that it is "generally improper to seek relief in a motion for preliminary injunction wholly unrelated to the allegations of the complaint").

Next, the "frequently reiterated standard" regarding irreparable harm to the moving party is

7

that the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis added). A possibility of irreparable injury is "too lenient," because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy." *Id.* A court should not issue a preliminary injunction "simply to prevent the possibility of some remote future injury," *Id.* (internal quotations omitted), or "merely to allay the fears and apprehensions or to soothe the anxieties of the parties." *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 864 F. Supp. 2d 316, 325 (E.D. Pa. 2012).

Plaintiff asks the Court to enjoin Defendants Augustine, Burick, and Riley,[1] as members of the Shenango Township's Board of Supervisors, from "any further discriminatory use of the property, encouragement of use, or dissuasion of use of the property." (Pl.'s Br. 3, ECF No. 134). Plaintiff also asks the Court to enjoin Defendant Leonatti from "making any further defamatory statements or otherwise interfering with the disposition and use of the disputed land." *Id.* at 3. For the reasons discussed below, both of these requests fail and Plaintiff is therefore not entitled to a preliminary injunction.

A. Use of the YDC property

Plaintiff first seeks an injunction regarding the use of the YDC property, asking that the Court order Defendants Augustine, Burick, and Riley to refrain from "any further discriminatory use of the property." *Id.* at 3. Specifically, Plaintiff wants the Court to order "that the continued

---

[1] Plaintiff asks the Court to enjoin all Defendants except Defendant Leonatti regarding the use of the YDC property, but because the Court has ordered a stay in proceedings regarding Defendants Sainato, Bernstine, and Vogel, the Court will not address the injunction as to them at this time.

8

use of the property . . . not be allowed to encompass all prior bidders except Plaintiff, as is the current plan articulated by Defendants." *Id.* at 8. Plaintiff alleges that the current owner of the property, LCCAP, has plans to extend opportunities to use the YDC property to other bidders. (Compl. ¶ 105, ECF No. 1). Plaintiff also states that such cooperation has begun, in that LCCAP has entered a contract with a recycling operator. *Id.* at ¶ 112. According to Plaintiff, LCCAP has not contacted Plaintiff to extend an invitation to use the property. *Id.* at ¶¶ 106, 113. Plaintiff alleges that LCCAP intends to use the YDC property in an unequal and discriminatory manner, and asks that the Court order LCCAP to include Plaintiff in its plans. (Pl.'s Br. 8–9, ECF No. 134).

However, Plaintiff's request for injunctive relief regarding use of the YDC property is flawed. For starters, Plaintiff confuses who has control over the property. Plaintiff states that it seeks an injunction regarding the use of the property against all Defendants accept Defendant Leonatti, because Plaintiff recognizes that Defendant Leonatti has no control over the property. *Id.* at 3. However, Plaintiff fails to offer any facts showing that Defendants Augustine, Burick, or Riley have any property interest in, and therefore control of, the YDC property. To the contrary, Plaintiff clearly acknowledges LCCAP's ownership. Furthermore, Plaintiff confuses who is at fault for Plaintiff's alleged improper exclusion, stating that it is Defendants' plan to exclude Plaintiff from using the YDC property, *Id.* at 8, but then recognizing that LCCAP is the landowner, the one announcing plans for the property, and the one excluding Plaintiff from using the property. *Id.* at 6–7.

Second, the harm for which Plaintiff seeks redress in its Complaint is discriminatory conduct that led to the failure of a land sale contract, (Compl. ¶¶ 117, 133, 146, ECF No. 1), but in its request for injunctive relief, Plaintiff seeks redress for different discriminatory conduct

9

regarding the use of another entity's land. (Pl.'s Br. 8–9, ECF No. 134). The alleged discrimination that interfered with the land sale contract presents a separate set of facts from the alleged discrimination that Plaintiff asserts will occur at the hands of LCCAP. The preliminary injunction Plaintiff seeks is thus improper because it is unrelated to the claims in the Complaint.

Next, Plaintiff's concerns about LCCAP's use of the YDC property are based on LCCAP's future intentions—no harm has actually taken place and there is not enough information to show that harm is likely to take place. That LCCAP has entered a contract with one other entity does not demonstrate that Plaintiff is being treated unequally from other bidders. The speculative nature of Plaintiff's concerns is further underlined by Plaintiff's statement at oral argument that LCCAP has yet to commit a wrong. Because Plaintiff's request for injunctive relief is based on a speculative, future harm that has yet to occur, and Plaintiff cannot demonstrate it will suffer irreparable harm.

In sum, essentially what Plaintiff seeks is for the Court to order a non-party landowner to allow Plaintiff to use land in which Plaintiff has no interest,[2] because the non-party—which "has not done anything wrong"—might engage in discriminatory conduct, unrelated to the claims in the Complaint, at some point in the future. A preliminary injunction is an "extraordinary remedy," *Winter*, 555 U.S. at 22, and Plaintiff plainly falls short of demonstrating it is entitled to one.

B. Defamatory statements

Plaintiff also seeks a preliminary injunction against Defendant Leonatti, asking that the

---

[2] Despite Plaintiff's repeated contentions to the contrary, Plaintiff has no property interest in the YDC property. Moreover, the property owner, LCCAP, is not a party in this case. By asking the Court to order LCCAP to include Plaintiff, Plaintiff asks the Court to alter LCCAP's right to exclude—one of the basic property ownership rights in the proverbial "bundle of sticks"—without LCCAP's presence in this case. *See Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979).

Court prohibit Defendant Leonatti from "making any further defamatory statements or otherwise interfering with the disposition and use of the disputed land." *Id.* at 3. Similarly, Plaintiff asks the Court to enjoin Defendants Augustine, Burick, and Riley[3] from "any further discriminatory . . . encouragement of use, or dissuasion of use of the property." *Id.* In other words, Plaintiff requests that the Court limit Defendants' speech regarding the future use of the YDC property. This portion of Plaintiff's Renewed Motion for Preliminary Injunction also fails, because the injunctive relief is too broad and does not properly fit the alleged injury, and because Plaintiff does not demonstrate that it will suffer irreparable harm in the absence of a preliminary injunction.

First, an injunction on a person's speech operates as a prior restraint, generally impermissible as a violation of that person's First Amendment rights. *Tory v. Cochran*, 544 U.S. 734, 738 (2005). In order to be permissible, a prior restraint "must be 'precise' and narrowly 'tailored' to achieve the 'pin-pointed objective' of the 'needs of the case.'" *Id.* (quoting *Carroll v. President and Comm'rs of Princess Anne*, 393 U.S. 175, 183–84 (1968)). Here, what Plaintiff seeks is far too broad and will impose too great a restraint on Defendants' right to free speech. Discrimination and discriminatory intent are highly contextual, so it is hard to imagine parameters that would be precise enough to pass muster. Furthermore, an injunction on speech will not address the "needs of the case." The harm that is the focus of the case—the alleged interference with Plaintiff's purchase of the YDC property—has already occurred and is not ongoing. Restraining Defendants' speech going forward does not redress the wrong that Plaintiff alleges has occurred.

---

[3] Plaintiff seeks this particular injunctive relief against all Defendants except Defendant Leonatti, but, again, due to the stay of proceedings against Defendants Sainato, Bernstine, and Vogel, the Court will not address the injunction as to them at this time.

11

Second, Plaintiff has not established that it will suffer irreparable harm if the preliminary injunction against Defendants' speech is not granted. As discussed above, Plaintiff has no interest in the YDC property, and the sale of the property to another entity has been finalized, so Defendant Leonatti is logically unable to "mak[e] any further defamatory statements or otherwise interfer[e] with the disposition" of the property unless the property is put back up for sale and Plaintiff again bids on it. Additionally, as regards statements by Defendants Leonatti, Augustine, Burick, and Riley about the use of the land, whether they will make defamatory or discriminatory statements that will have an impact on whether LCCAP invites Plaintiff to use the YDC property is too speculative. Plaintiff had the burden of showing that irreparable harm is likely, not simply that irreparable harm is a possibility, and therefore fails to meet its burden.

In sum, a preliminary injunction ordering Defendants to refrain from making defamatory or discriminatory statements regarding the use of the YDC property is improper as an impermissible prior restraint on free speech and because Plaintiff failed to show that it will suffer irreparable harm.

THEREFORE, based on the foregoing, Plaintiff HIRA Educational Services of North America's Renewed Motion for Preliminary Injunction is DENIED as to Defendants Leonatti, Augustine, Burick, and Riley. The Court will address the issue of a preliminary injunction as to Defendants Sainato, Bernstine, and Vogel upon motion of any party after the stay is lifted.

IT IS SO ORDERED.

DATE January 7, 2019

Marilyn J. Horan
United States District Judge