IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HIRA EDUCATIONAL SERVICES OF NORTH AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FRANK AUGUSTINE, *in his official capacity as Chairman of the Board of Supervisors of the Twp of Shenango, Lawrence County, Pennsylvania*; ALBERT BURICK III, *in his official capacity as Supervisor and Secretary-Treasurer of the Board of Supervisors of the Twp of Shenango, Lawrence County, Pennsylvania*; RUSSELL RILEY, *in his official capacity as Vice-Chairman of the Board of Supervisors of the Twp of Shenango, Lawrence County, Pennsylvania*; BRUCE LEONATTI, *in his official capacity as President of the Pittsburgh Chapter of Act For America*; AARON BERNSTINE, *in his individual capacity as State Representative of the Pennsylvania State House of Representatives*; CHRISTOPHER SAINATO, *in his individual capacity as State Representative of the Pennsylvania State House of Representatives*; and ELDER VOGEL JR., *in his individual capacity as Senator at the Pennsylvania State Senate*; <br><br> Defendants. | 2:18-CV-00486 <br><br> Judge Marilyn J. Horan |

## **OPINION AND ORDER**

On April 13, 2018, Plaintiff HIRA Education Services of North America filed a Complaint alleging, among other claims against other Defendants, that Defendant Bruce Leonatti violated 42 U.S.C. § 1981 by engaging in discriminatory conduct that interfered with Plaintiff's contract for the purchase of real property. (Compl. ¶¶ 139–41, ECF No. 1). Defendant Leonatti filed a Motion to Dismiss, (ECF No. 106), which was dismissed in June 2018 without prejudice

1

as premature. (ECF No. 114). Defendant Leonatti appealed the dismissal of his Motion. (ECF No. 115). Defendant Leonatti did not seek a stay in proceedings before the District Court during the pendency of his appeal, and on February 6, 2019, the Third Circuit dismissed the appeal for lack of jurisdiction. (ECF No. 169).

On December 24, 2018, Defendant Leonatti filed a Motion for Sanctions against Plaintiff and Plaintiff's counsel, arguing that the claim against Defendant Leonatti is frivolous and violates Fed. R. Civ. P. 11. (ECF Nos. 157, 158). Following briefing by the parties, the Court heard oral argument on January 24, 2019. At oral argument, the Court notified the parties that it was taking under consideration a Motion to Dismiss, sua sponte, because the issues raised in the Motion for Sanctions addressed issues similar to a motion to dismiss. (ECF No. 168). The Court also issued a briefing schedule to give the parties an additional opportunity to be heard on the matter. *Id.* Defendant Leonatti's Motion for Sanctions and the sua sponte Motion to Dismiss regarding the single claim against Defendant Leonatti are now before the Court.

Based on the following reasons, the Motion for Sanctions will be denied and the Motion to Dismiss will be granted.

**I. Background**

In the spring of 2017, Plaintiff HIRA Educational Services of America, an Islamic consulting firm that caters to Islamic schools and organizations, sought to purchase a former youth development center (YDC) property located in Shenango Township. (Compl. ¶¶ 4, 24, ECF No. 1). The YDC property was owned by the Commonwealth of Pennsylvania, and the Department of General Services (DGS) managed the sale of the YDC property on behalf of the Commonwealth. (Joint Stip. as to Ownership of Property ¶ 3, ECF No. 46; Compl. ¶ 20, ECF No. 1). Plaintiff's plans for the property included a juvenile facility focusing on youth

2

intervention, as well as potential plans for an Islamic boarding school. (Compl. ¶ 25, ECF No. 1). Plaintiff submitted the winning bid and received an agreement of sale from DGS in May 2017. *Id.* at ¶ 24. Plaintiff timely signed and returned the agreement by June 15, 2017. *Id.* at ¶ 48. The sale agreement then went through the Commonwealth signature process, which included signatures from state officials. *Id.* at ¶ 49.

On June 6, 2017, Defendants Augustine, Burick, and Riley, sued herein in their official capacities as members of the Board of Supervisors for Shenango Township, wrote to DGS, requesting information about Plaintiff's plans and stating their concerns. *Id.* at ¶ 30. Their concerns included impact on local tax revenues, conformance with the Township's zoning ordinances, and potential collusion among the bidders. *Id.* at ¶¶ 31–33. On June 23, 2017, Shenango Township residents held a community meeting, which drew a large crowd, including Township supervisors, Defendants Augustine, Burick, and Riley. *Id.* at ¶ 51. Also in attendance at the community meeting was Defendant Leonatti, representing Act for America, a group "committed to recruiting, training, and mobilizing citizens community by community to help protect and preserve American culture and to keep this nation safe." *Id.* at ¶ 53 & n.3. Defendant Leonatti allegedly made "unfounded and inaccurate" statements at the meeting and to news outlets about Plaintiff's plans for the YDC property. *Id.* at ¶¶ 53–54. Defendant Leonatti allegedly stated that "he <u>thinks</u> he knows HIRA's plan, and that it was 'to become an immigration refugee contractor that can bring in thousands of refugees if they have a facility to house them.'" *Id.* at ¶ 53. He added that he was "going to be Paul Revere. I'm here to send out a warning." *Id.* Additionally, "Defendant Leonatti told local news outlets that Act for America advises local communities on how to fight the location of refugee camps in their communities, and that if housing refugees was HIRA's plan, the community may find it easier to fight the sale

3

under President Donald Trump's administration than it would have been to fight under President Barack Obama's administration." *Id.* at ¶ 54.

A few weeks later, on July 13, 2017, Plaintiff timely paid the deposit for the YDC property. *Id.* at ¶¶ 50, 81. Plaintiff anticipated that the sale process would be complete by October 2017, as the remainder of the sale price was due by September 11, 2017. *Id.* at ¶¶ 28, 50. However, in July 2017, the Township filed a Statement of Claim against DGS in the Commonwealth of Pennsylvania's Board of Claims; the Board of Claims ultimately dismissed the Statement of Claim with prejudice on September 15, 2017 because of a lack of jurisdiction. *Id.* at ¶¶ 73, 83. Also in July 2017, the Township filed a Petition for Review in the Commonwealth Court of Pennsylvania in an attempt to halt the sale of the YDC property to Plaintiff. *Id.* at ¶ 77. In the Petition for Review, the Township claimed Plaintiff violated the Non-Collusion Affidavit that is required in the submission of every bid. *Id.* The Township also expressed a concern that Plaintiff's winning bid was "far below the assessed value of the property," as well as concerns about Plaintiff's ability to pay for the taxes and upkeep of a property worth more than $3 million dollars. *Id.* at ¶ 78.

Plaintiff alleges that it was unable to obtain the required financing by the deadline in the agreement because no institution would provide a loan while there was pending litigation regarding the property. *Id.* at ¶ 90. Additionally, DGS could not deliver the property free of lawsuits, so it was unable to perform its side of the contract. *Id.* at ¶ 91. Neither party could meet the requirements of the sale agreement, and the sale agreement was nullified on August 30, 2017. *Id.* at ¶ 89. As a result of the sale agreement's nullification, the Petition of Review, pending before the Commonwealth Court, was dismissed as moot on September 26, 2017. *Id.* at ¶ 94. DGS later sold the YDC property to another entity, which is not a party to the current suit. (Joint Stip. ¶ 3, ECF No. 46). Consequently, Plaintiff filed the present suit on April 13, 2018,

4

claiming that Defendant Leonatti "unlawfully interfered with and violated Plaintiff's contractual rights, in violation of 42 U.S.C. § 1981." (Compl. ¶¶ 137–41, ECF No. 1). Now before the Court are Defendant Leonatti's Motion for Sanctions and the Court's sua sponte Motion to Dismiss regarding the § 1981 claim.

**II. Legal standards**

A. Motion for Sanctions

Rule 11 of the Federal Rules of Civil Procedure provides that an attorney who presents "a pleading, written motion, or other paper" to the court certifies that "it is not being presented for any improper purpose"; that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). In order to determine whether Rule 11 has been violated, the court assesses whether the attorney's conduct "was objectively reasonable under the circumstances." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994). Sanctions, imposed as the result of a Rule 11 violation, are reserved for exceptional circumstances. *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 297 (3d Cir. 2010). A motion for sanctions thus is not the proper avenue by which to challenge the legal sufficiency of a claim; rather, a motion to dismiss or a motion for a more definite statement is the appropriate mechanism. *Marlowe Patent Holdings v. Ford Motor Co.*, 2013 U.S. Dist. LEXIS 171762, at *13 (D.N.J. Dec. 4, 2013).

B. Motion to Dismiss

In deciding a motion to dismiss a complaint under Rule 12(b)(6), a court must first "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (internal quotations omitted).

The court then must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* A complaint is sufficient only when it is facially plausible, meaning that the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To be plausible on its face, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." *Id.* The court need not "accept unsupported conclusions and unwarranted inferences." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

Additionally, a court may consider dismissal for failure to state a claim on its own motion. *See Bethea v. Nation of Islam*, 248 F. App'x 331, 333 (3d Cir. 2007) ("Generally, a district court may sua sponte dismiss a complaint under Rule 12(b)(6) after service of process only if the plaintiff is afforded an opportunity to respond."); *Bynum v. Trustees of Univ. of Pa.*, 115 F. Supp. 3d 577, 590–91 (E.D. Pa. 2015) ("Even if a party does not make a formal motion to dismiss, we may, sua sponte, dismiss a complaint if its inadequacy is apparent as a matter of law.") "Before sua sponte dismissal is appropriate, however, a court must give the plaintiff notice and an opportunity to be heard on the legal viability of his complaint." *Walsh v. Krantz*, 2008 U.S. Dist. LEXIS 64835, at n.12 (M.D. Pa. Aug. 22, 2008).

### III. Discussion

Defendant Leonatti initially sought dismissal of the claim against him in June 2018, arguing that he is not a proper defendant under § 1981, that Plaintiff's claim is actually a claim for defamation improperly brought under § 1981, and that Plaintiff did not plead facts showing that Defendant Leonatti's actions caused the failure of Plaintiff's contract. (ECF No. 107). The Court found that Defendant Leonatti's Motion to Dismiss was premature due to the need to

6

develop certain facts, and the Court dismissed the Motion without prejudice. (ECF No. 114). In December 2018, rather than renewing his Motion to Dismiss, Defendant Leonatti moved for sanctions against Plaintiff and its attorneys. (ECF No. 157). Defendant Leonatti asserts that the claim against him is frivolous, reasserting the arguments he made in his earlier Motion to Dismiss and stating that "Plaintiff's claim against Defendant Leonatti fails so spectacularly on so many levels that it is a clear violation of Rule 11." (ECF No 157; ECF No. 158, at 8). Because the parties' arguments focused on the legal sufficiency of the claim, the Court notified the parties that it was considering a motion to dismiss for failure to state a claim, sua sponte, in addition to the Motion for Sanctions. (ECF No. 168).

A. Proper defendant under § 1981

In his Motion for Sanctions, Defendant Leonatti argues, as he did in his earlier Motion to Dismiss, that he is not a proper defendant under 42 U.S.C. § 1981. (ECF Nos. 107, 157, 158). He maintains that case law has clearly established that to be a proper defendant, he either must have been a party to the contract at issue or have been "essentially the same" as a party to the contract. (ECF No. 158, at 4). Defendant Leonatti contends that Plaintiff's attorneys are subject to sanctions because they failed to investigate and understand the law on this issue. *Id.* at 1.

Section 1981 prohibits the impairment, on the basis of race, of a person's right to make and enforce contracts. 42 U.S.C. § 1981. Accordingly, "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). It is well-settled that in order to bring a § 1981 claim, the plaintiff must have been a party, or a "would-be" party, to the contract at issue. *Id.* However, despite Defendant Leonatti's emphatic assertions to the contrary, whether the *defendant* must have been

7

a party to the contract in order for the plaintiff to have a viable § 1981 claim is not so well-settled. Likewise, whether the third party must be "essentially the same" as a party to the contract in order to be a proper defendant is not as clear as Defendant Leonatti claims. Defendant Leonatti relies on a Fifth Circuit case, *Felton v. Polles*, 315 F.3d 470 (5th Cir. 2002), and seems to characterize *Felton*, in which a state employee alleged employment discrimination under § 1981 and § 1983, as having decided these issues. (ECF No. 158, at 4). However, in *Felton*, the court started by noting that "*it is not clear* whether a §1981 claim lies against an individual defendant not a party to the contract giving rise to the claim," and pointing out that the Fifth Circuit had not yet decided the issue. *Felton*, 315 F.3d at 480 (emphasis added). The court then stated only that "it would appear," based on 1997 Fifth Circuit case's limited reading of a 1975 Fifth Circuit case, that the defendant, a third party to the contract, could be liable "if he were 'essentially the same' as the State for purposes of the complained-of conduct." *Felton*, 315 F.3d at 480–81. The court concluded, however, that it did not need to decide the issue because the case could be decided on other grounds. *Id.* at 481. Consequently, *Felton* is not persuasive here.

Additionally, and quite the opposite of *Felton*, several cases from courts within the Third Circuit have held that "[a] third party can be liable under § 1981 if that party intentionally interferes, on the basis of race, with another's right to make and enforce contracts, regardless of whether the employer or anyone else may also be liable." *Collins v. Christie*, 2008 U.S. Dist. LEXIS 53233, at *31 (E.D. Pa. July 11, 2008) (executor of a deceased's estate was a proper defendant in a suit alleging interference with an employment contract to which the deceased was not a party); *see also Aboudekika v. Del. River & Bay Auth.*, 2011 U.S. Dist. LEXIS 82466, at *27–28 (D.N.J. July 26, 2011) (supervisor was a proper defendant despite there being no contract between the plaintiff-employee and the supervisor); *McClease v. R.R. Donnelley & Sons Co.*,

8

226 F. Supp. 2d 695, 699 (E.D. Pa. 2002) (holding that the plaintiff's claims would be actionable under § 1981 if the plaintiff's dismissal from the defendant distribution facility "interfered with a purely contractual relationship between" the plaintiff and the temp agency that supplied the plaintiff as a worker to the defendant); *Cimino v. Del. Dep't of Labor*, 2002 U.S. Dist. LEXIS 2979, at *16 (D. Del. Feb. 25, 2002) (state official sued in his individual capacity was a proper defendant because, even though he was not a party to the employment contract between the plaintiff and the subcontractor, he "was directly involved with the decision to terminate" the plaintiff); *Pryor v. NCAA*, 153 F. Supp. 2d 710, 718 n.8 (E.D. Pa. 2001), *rev'd in part on other grounds*, 288 F.3d 548 (3d Cir. 2002) (noting that "§ 1981 proscribes discrimination not only as to the contracting party but also as to a third party whose interference affects the formation of a contract"). In addition to holding that third parties, or non-parties to the contract, can be liable under § 1981, none of the foregoing cases include language resembling the requirement that the defendant be "essentially the same" as a party to the contract.

In sum, it appears that a third party can be liable under § 1981, or in the very least, third-party liability under § 1981 is not the settled issue that Defendant Leonatti would have the Court believe. Plaintiff's claim against Defendant Leonatti thus does not exhibit a failure to investigate or a failure to understand the law, and accordingly, is not frivolous nor violative of Rule 11. Therefore, neither Plaintiff nor Plaintiff's attorneys are subject to sanctions on this issue.

B. Causation

Next, Defendant Leonatti argues in his Motion for Sanctions, much as in his prior Motion to Dismiss, that Plaintiff failed to plead facts showing that Defendant Leonatti's statements at the community meeting caused Plaintiff's contract to purchase the YDC property to fall through.

9

(ECF No. 158, at 5, 7; ECF No. 107, at 6). Defendant Leonatti asks the Court to sanction Plaintiff for this failure. (ECF No. 158, at 8).

As stated above, § 1981 "forbids intentional discrimination based upon race in the making and enforcement of contracts." *Boykin v. Bloomsburg Univ.*, 893 F. Supp. 409, 416 (M.D. Pa. 1995). To establish a claim under § 1981, "a plaintiff must show (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts." *Pryor v. NCAA*, 288 F.3d 548, 569 (3d Cir. 2002) (internal quotations omitted). As to the third element, "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). In other words, a plaintiff must plead facts showing not only that the defendant engaged in discriminatory conduct, but also that the defendant's conduct caused the alleged impairment of the plaintiff's right to make or enforce a contract. *See, e.g., Collins v. Christie*, 2008 U.S. Dist. LEXIS 53233, at *37 (E.D. Pa. July 11, 2008) (referring to the third element of the plaintiff's § 1981 claim as the causation element).

Despite Defendant Leonatti's alleged discriminatory conduct, the contract for the sale of the YDC property between Plaintiff and DGS continued to move forward, as evidenced by DGS's acceptance of Plaintiff's down payment. (Compl. ¶ 50, ECF No. 1). The contract fell through, however, because of pending litigation regarding the YDC property. *Id.* at ¶¶ 89–91. The pending litigation, filed by members of the Township's Board of Supervisors, Defendants Augustine, Burick, and Riley, was based on concerns related to tax payment and alleged collusion in the bidding process. *Id.* at ¶¶ 77–78. Those concerns pre-dated Defendant

10

Leonatti's statements, as evidenced by the letter the Defendant Township Supervisors sent to DGS on June 6, 2017—more than two weeks prior to the June 23 community meeting where Defendant Leonatti spoke. *Id.* at ¶¶ 30–33. Not only do the facts pleaded by Plaintiff show that Defendant Leonatti's conduct had no impact on DGS's decision to move forward with forming the land sale contract with Plaintiff, but Plaintiff does not plead any facts establishing a causal connection between Defendant Leonatti's alleged conduct and the decision by the Defendant Township Supervisors to institute legal proceedings. Therefore, since Plaintiff has failed to plead facts sufficient to support all the elements of a cause of action under §1981, its claim against Defendant Leonatti fails under Rule 12(b)(6), and must be dismissed.

Additionally, as to Defendant Leonatti's Motion for Sanctions, a failure to plead sufficient facts is a common occurrence, not an "exceptional circumstance" contemplated by Rule 11. Stated differently, this failure to plead sufficient facts is not so exceptional that it violates Rule 11, and it is best handled by a motion to dismiss or a motion for a more definite statement. Accordingly, neither Plaintiff nor Plaintiff's counsel is subject to sanctions on this issue.

C. Defamation

Lastly, Defendant Leonatti argues that Plaintiff and its attorneys are subject to sanctions because Plaintiff's § 1981 claim against him is actually a claim for defamation. (ECF No. 158, at 6). Defendant Leonatti asserts that it is well-settled that defamation is not actionable under § 1981. (ECF No. 158, at 6). Again, however, Defendant Leonatti appears to mischaracterize the case law he cites.

The Supreme Court has stated that "[d]efamation, *by itself*, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233

(1991) (emphasis added). In the same vein, the Eastern District of Pennsylvania has noted that "[d]amages for defamation are not recoverable under the Civil Rights Act because a defamed person has not been deprived of any rights, privileges or immunities secured to him by the Constitution or laws of the United States." *Duff v. Sherlock*, 432 F. Supp. 423, 429 (E.D. Pa. 1977). What these statements—the second of which is cited by Defendant Leonatti, (ECF No. 158, at 6–7)—do not say, however, is that defamatory statements cannot operate to cause an interference with a right enumerated in § 1981. Rather, these statements simply state that relief will not be afforded under § 1981 for defamation that is disconnected from a constitutional right. One of the cases cited by Defendant Leonatti is instructive. In *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262 (10th Cir. 1989), the plaintiff "merely allege[d] *possible* loss of *future* opportunities," and the court concluded accordingly that the defamation at issue did "not deny him the basic *right* to contract." *Phelps*, 886 F.2d at 1267. The court distinguished the plaintiff's case from caselaw cited by the plaintiff, explaining that those cases "all involve *actual* loss of employment or other contract interests." *Id.* In other words, a plaintiff cannot bring a claim under § 1981 alleging only that a defamatory statement harmed his future potential contract opportunities; he must allege concrete harm to a right protected by § 1981, which came about as a result of the defamatory statement.

Here, Plaintiff does not allege "possible loss of future opportunities," but instead alleges an actual loss—the failure of its land sale agreement. (Compl. ¶ 89, ECF No. 1). Plaintiff also alleges that Defendant Leonatti's statements interfered with its contract in violation of § 1981. *Id.* at ¶¶ 139–41. Plaintiff's § 1981 claim thus is not a claim for defamation disconnected from the activities enumerated in § 1981, unlike the defamation at issue in *Phelps*. Although Plaintiff failed to plead facts sufficient to support its allegation that Defendant Leonatti's statements caused Plaintiff's contract to be impaired, Plaintiff nonetheless connected (albeit, in a conclusory

12

fashion) Defendant Leonatti's statements to an actual loss. Furthermore, as discussed above, a motion for sanctions is not appropriate for challenging the legal sufficiency of a claim; that function is reserved for a motion to dismiss or a motion for a more definite statement. Therefore, Plaintiff's § 1981 claim is not frivolous nor a violation of Rule 11, and neither Plaintiff nor Plaintiff's attorneys are subject to sanctions on this issue.

## IV. Conclusion

THEREFORE, the Motion for Sanctions filed by Defendant Bruce Leonatti is hereby DENIED, and the Motion to Dismiss for failure to state a claim is hereby GRANTED. Accordingly, the cause of action pertaining to Defendant Leonatti is dismissed.

IT IS SO ORDERED.

DATE March 4, 2019

Marilyn J. Horan
United States District Judge